UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

VIRGINIA INNOVATION
SCIENCES, INC.,

        Plaintiff,

v.                            Case No.: 2:12cv548

SAMSUNG ELECTRONICS CO.,
LTD., ET AL.,

        Defendants.

## OPINION AND ORDER

This matter is currently before the Court on two motions filed by plaintiff Virginia Innovation Sciences, Inc. (hereinafter "Plaintiff" or "VIS") regarding a counterclaim advanced by Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (collectively "Samsung" or "Defendants"). ECF Nos. 141, 266. Plaintiff's first motion requests that the Court strike Defendants' thirteenth counterclaim, relating to inequitable conduct, or, in the alternative, grant summary judgment in favor of VIS on such counterclaim. Mot. to Strike 1, ECF No. 141. Plaintiff's second motion alternatively requests that, if the Court denies the first motion, the Court enter an order "bifurcating this case into a jury trial and a bench trial, and, in the jury trial, excluding evidence relating solely to inequitable conduct and Defendants' 35 U.S.C. § 111 defense."

1

ECF No. 266. Also before the Court is Defendants' request for judicial notice filed in response to VIS's first motion. ECF No. 154. All three motions have been fully briefed and are therefore ripe for decision.

After examination of the briefs and the record, the Court determines that a hearing is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. See Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons that follow, the Court **GRANTS** Defendants' request for judicial notice. ECF No. 154. With regard to Plaintiff's first motion, the Court **DENIES** Plaintiff's request to strike Defendants' counterclaim and affirmative defense of inequitable conduct, but **GRANTS** summary judgment in favor of Plaintiff on Defendants' thirteenth counterclaim. ECF No. 141. Having granted summary judgment in favor of Plaintiff on Defendants' counterclaim of inequitable conduct, the Court **DENIES as moot** Plaintiff's motion to bifurcate. ECF No. 266.

## I. FACTUAL BACKGROUND

At issue in this case are five[1] patents: U.S. Patent No. 7,899,492 ("the '492 patent"), U.S. Patent No. 8,050,711 ("the '711 patent"), U.S. Patent No. 8,145,268 ("the '268 patent"),

[1] Previously, there were six patents at issue in this case. However, U.S. Patent Nos. 7,957,733 ("the '733 patent") is no longer asserted as infringed. Agreed Dismissal Order, ECF. No. 408.

2

U.S. Patent No. 8,224,381 ("the '381 patent"), and U.S. Patent No. 8,135,398 ("the '398 patent").  All of the patents-in-suit are continuations or continuations-in-part of the '492 patent, which in turn issued from U.S. Patent Application No. 11/165,341 ("the '341 application"), filed June 24, 2005.  The '711, '268, and '381 patents are continuations from the '492 patent and, thus, claim priority directly to the '492 patent, which ultimately claims priority to provisional application number 60/588,359, filed on July 16, 2004.  The '711, '268, and '381 patents all share a substantively identical specification ("the '492 specification").  U.S. Patent No. 7,957,733 ("the '733 patent"), which is no longer at issue in this case, was filed on May 22, 2007 as a continuation-in-part of the '492 patent.  The '398 patent is a continuation from the '733 patent.  The shared specification of the '733 and '398 patents ("the '398 specification") includes all of the '492 specification along with additional material.  Each of the patents-in-suit describes inventions intended to resolve the inconvenience and impracticability of viewing multimedia content on the small screens of mobile terminals.

## II. PROCEDURAL HISTORY

In the instant patent infringement action, VIS alleges that Defendants have directly, indirectly, and willfully infringed the patents-in-suit by making, using, offering for sale,

3

selling, and/or importing a wide range of accused products, including smartphones, tablets, Blue-ray players, and hubs. Pl.'s First Am. Compl., ECF No. 121. Samsung denies VIS's claims of infringement and asserts several affirmative defenses, including invalidity of all patents-in-suit, prosecution history estoppel and other equitable doctrines. Additionally, Samsung asserts counterclaims seeking declarations of non-infringement and invalidity for each of the patents-in-suit. Samsung's thirteenth counterclaim, which is at issue in the instant motions, alleges that "VIS's enforcement of the '492, '711, '268, '381, '733, and/or '398 Patents is barred, in whole or in part, as a result of VIS's inequitable conduct committed during prosecution of one or more of the Patents-in-Suit at the U.S. Patent and Trademark Office (USPTO)." Defs.' Answer to the First Am. Compl. 33, ECF No. 132. The alleged inequitable conduct includes submission of the '341 Application Declaration with a forgery of one of the inventor's signature, Prof. Halal's signature, and the withholding of "materially relevant information from the USPTO with the intent to deceive" during prosecution of the '733 and '398 patents, particularly the "Rakib" prior art reference. Id. at 34-40.

The Court held its Markman hearing in this matter on June 11, 2013 and issued its Markman opinion on September 25, 2013. ECF No. 198. Since the Markman hearing, there have been

4

numerous filings in this matter and several motions remain pending before the Court. By Order of October 25, 2013, the Court joined for trial this matter and <u>Virginia Innovation Sciences, Inc. v. Samsung Electronics Co., Ltd., et al.</u>, Case No. 2:13cv322. ECF No. 353. The trial of the two matters is now set for April 21, 2014. On November 15, 2013 the Court ruled on Defendants' Motion to Dismiss VIS's Claim for Willful Infringement; granting, in part, and denying, in part such motion. ECF No. 395. The Court found that the claim for willful infringement failed to state a plausible claim for relief with regard to willful infringement of the '711, '268, and '381 patents. On January 8, 2014, the Court ruled on Defendants' Motion for Summary Judgment; granting, in part, and denying, in part, such motion. ECF No. 413. The Court found no willful infringement, and also found claims 21, 22, 25, 28, and 29 of the '268 patent and claims 15, 60, 61 and 62 of the '398 patent invalid as anticipated.

Turning to the instant motions, the Court first addresses Defendants' unopposed request for judicial notice because that request impacts the remaining motions. ECF No. 154. The Court then addresses Plaintiff's motion to strike, or, in the alternative, for summary judgment and the associated responses, briefs, and declarations. ECF Nos. 141, 142, 152, 153, 173, 174, and 189. Finally, the Court will address Plaintiff's

motion to bifurcate and the associated responses and briefs. ECF Nos. 266, 267, 318, and 346.

### III. DISCUSSION

#### A.  Defendants' Request for Judicial Notice

Federal Rule of Evidence 201 "governs judicial notice of . . . adjudicative fact[s]." Fed. R. Evid. 201(a). The Court is permitted to take judicial notice "on its own," Fed. R. Evid. 201(c)(1), however, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information," Fed. R. Evid. 201(c)(2).

Defendants request that the Court take judicial notice of the travel distances to a specific address in Arlington, Virginia from various starting locations. Request for Judicial Notice 1-2, ECF No. 154. Information on these distances, sourced from online resources,[2] was supplied to the Court in an Appendix of Exhibits. App'x of Exs., Exs. K-N, ECF Nos. 155-7, 155-8, 155-9, & 155-10. Plaintiff takes no position with regard to this request.

Federal Rule of Evidence 201 permits district courts to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

---

[2] The online resources include maps.google.com, www.distancefromto.net, and www.worldatlas.com.

readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). The United States Court of Appeals for the Fourth Circuit has ruled that "geographical information is especially appropriate for judicial notice." United States v. Johnson, 726 F.2d 1018, 1021 (4th Cir. 1984); see also United States v. Lavender, 602 F.2d 639, 641 (4th Cir. 1979). Accordingly, district courts within the Fourth Circuit have on several occasions taken notice of travel distances, including in cases where the information was supplied from online sources. See, ElcomSoft, Ltd. v. Passcovery Co., Ltd., 958 F. Supp. 2d 616, 622 (E.D. Va. 2013), reconsideration denied (Dec. 19, 2013) (taking "judicial notice that Russia is far from this District, and that any willing witnesses will face significant travel costs"); Rogers v. Metro. Life Ins. Co., No. CIV. JKB-12-1012, 2013 WL 2151675, at *8 n.5 (D. Md. May 15, 2013) (referring to driving distances obtained from Mapquest.com in taking "judicial notice that Odenton, Maryland . . . is approximately eighteen miles from downtown Baltimore, twenty-seven miles from downtown Washington, and fifteen miles from Annapolis"); United States v. Franklin, No. CRIM. MJG-11-0095, 2012 WL 71018, at *1 n.3 (D. Md. Jan. 9, 2012) (taking "judicial notice of the Yahoo Internet directions to provide distance and driving time estimates").

As the Court has been "supplied with the necessary information," pursuant to Fed. R. Evid. 201(c)(2), the Court takes judicial notice of the following facts: 1) that [street number withheld] Maud Street NW, in Washington, DC is less than eight miles driving distance from [street number withheld] Joyce Street, in Arlington, Virginia; 2) that Beijing, China is over 6,900 miles flight distance from Arlington, Virginia; and 3) that La Jolla, California is over 2,600 miles driving distance from Arlington, Virginia.

## B. VIS's Motion to Strike

### i. VIS's Arguments in Support of the Motion

VIS asserts that Defendants' thirteenth counterclaim, which alleges inequitable conduct and was first asserted in Defendants' Amended Answer, should be struck for failure to comply with Federal Rule of Civil Procedure 15(a). Pl.'s Mem. in Supp. of Mot. to Strike 12, ECF No. 142 (hereinafter "Mem. in Supp."). VIS cites to Elite Entm't, Inc. v. Khela Bros. Entm't, 227 F.R.D. 444, 446 (E.D. Va. 2005), for the proposition that "[i]n response to an amended complaint, an amended response may be filed without leave only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint." Mem. in Supp. 12, ECF No. 142 (emphasis in original).

8

Relying on such authority, VIS argues that Samsung cannot add the new counterclaim asserting inequitable conduct without leave of court because the counterclaim "is not tied to [VIS]'s allegation of willful infringement" that was added in the First Amended Complaint and, thus, "does not reflect the breadth of the changes in the [First Amended Complaint]." Id. at 12-13. Anticipating a favorable ruling by the Court on its motion to strike, VIS also asserts that, should Defendants request leave from the Court to amend their counterclaims, "their request should be denied due to their undue delay and the prejudice to [VIS]." Id. at 13 (citing Elite Entm't, 227 F.R.D. at 447).

### ii. Samsung's Arguments in Opposition

Samsung asserts that the requirement that a response "reflect[] the breadth of the amendments to the complaint" is "a measure of proportionality, not of relation." Mem. in Response 2, ECF No. 152 (citing Elite Entm't, 227 F.R.D. at 446-47). Samsung argues that "the changes [in its counterclaim] are proportional" because "both [the addition of willful infringement by VIS and the addition of inequitable conduct by Samsung] expand the scope of the lawsuit" and add a new claim. Samsung further argues that VIS is applying the standard in Elite Entm't "in a way squarely rejected by that court." Id. at 2-3. Samsung also contends that not only did "[t]he [First Amended Complaint] change[] the scope of this case by adding

9

willful infringement," but that "[a]s a result, Samsung 'is allowed to answer the amended complaint anew as though it were the original complaint.'" Id. at 1 (citing Digital Privacy, Inc. v. RSA Security, 199 F. Supp. 2d 457, 459 n.2 (E.D. Va. 2002)). Additionally, Samsung posits that, based on VIS's failure to challenge Samsung's affirmative defense of inequitable conduct in its motion to strike, the affirmative defense is not at issue here. Id. at 2.

### iii. VIS's Rebuttal Arguments

VIS asserts that Samsung's position, based on Digital Privacy, "that a defendant may amend its response after the plaintiff files an amended complaint . . . goes too far" as "the Digital Privacy opinion was issued earlier in time than the Elite opinion; thus, to the extent the two opinions are inconsistent, Elite should control." Pl.'s Rebuttal Br. 6-7, ECF No. 173. VIS argues that, under the Elite Entm't standard, "the changes in [VIS]'s amended complaint do not come close to 'changing the scope' of the case to allow Defendants to assert an entirely new counterclaim in their response" as the addition of the willful infringement allegation "merely allows for additional damages but does not change the nature of [VIS]'s infringement case against Defendants." Id. at 8. Alternatively, VIS argues that "even if the Court were to find that [VIS]'s amendment 'changed the scope' of the case within

10

the meaning of Elite, Defendants' new counterclaim fails the 'breadth' test" because it "interjects allegations of fraud and significantly alters the scope of the litigation." Id. at 8-9. VIS further argues that it "clearly intended for its motion to cover the affirmative defense of inequitable conduct." Id. at 5. VIS requests that, should the Court choose "to place form over function," VIS be given "leave to file a motion to dismiss or strike the affirmative defense on the ground that it is not pled with the required particularity." Id.

### iv. Applicable Standard

There are three Federal Rules of Civil Procedure that are implicated by the instant motion; Rule 12(f), which governs motions to strike, Rule 15(a), which governs amendments to pleadings, and former Rule 13(f), which governed the addition of omitted counterclaims. The 2009 Amendments to the Federal Rules of Civil Procedure made changes to Rule 15(a) and abrogated Rule 13(f). As "[n]o appellate court has squarely addressed[3] whether counterclaims filed in response to an amended complaint pursuant to Rule 15, Fed. R. Civ. P., must be permitted as of right or only with leave of court," the Court will look to the opinions of district courts on the issue. Elite Entm't, 227 F.R.D. at

---

[3] The Eighth Circuit has affirmed a case adopting the permissive approach, however, they did so in an unpublished table decision. Tralon Corp. v. Cedarapids, Inc., 966 F. Supp. 812, 832 (N.D. Iowa 1997), aff'd 2000 WL 84400 (8th Cir. Jan. 21, 2000) (unpublished table decision).

446; _see also_ <u>Childress v. Liberty Mut. Fire Ins. Co.</u>, C10-059RSL, 2011 WL 2071200, at *1 (W.D. Wash. May 25, 2011). A review of district court cases reveals that "district courts have taken variant positions on the issue," such that three lines of cases arose under the prior versions of the Federal Rules of Civil Procedure. <u>Elite Entm't</u>, 227 F.R.D. at 446 (citing <u>Uniroyal Chem Co. v. Syngenta Corp Prot., Inc.</u>, No. 3:02CV02253 (AHN), 2005 WL 677806, at *1 (D. Conn. March 23, 2005)).

These three approaches have been characterized as permissive, moderate, and narrow. Courts applying the narrow approach hold "that an amended answer must be confined specifically to the amendments to the complaint." <u>Id.</u> At the opposite end of the spectrum, those applying the permissive view hold that the defendant is allowed to plead anew to the amended complaint as though it were the original complaint. <u>Id.</u> In between these two views, those courts applying the moderate approach hold that "the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint." <u>Id.</u>

As described below, the 2009 Amendments, specifically the abrogation of Rule 13(f), superseded those cases following the narrow approach. After considering the cases applying the two remaining approaches, the Court finds that the permissive

12

approach deprives the Court of the ability to effectively manage litigation. Accordingly, the Court recognizes the moderate approach as the most appropriate.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In applying such rule, "a district court has broad discretion in deciding whether to strike matters from pleadings." F.D.I.C. v. Willetts, 882 F. Supp. 2d 859, 870 (E.D.N.C. 2012), reconsideration denied (Oct. 2, 2012) (citing Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc., 227 F. App'x. 239, 246 (4th Cir. 2007)). However, "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380, 647 (2d ed. 1990)).

Although Rule 12(f) provides the procedural mechanism for striking a pleading, a central issue in this motion is Federal Rule of Civil Procedure 15(a), which governs amendments to pleadings. Current Rules 15(a)(1) and (3), respectively, provide that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the

pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading. . ." and "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days of service of the amended pleading." Prior to the 2009 Amendments to the Federal Rules of Civil Procedure, Rule 15 provided, in relevant part, "'[a] party shall plead in response to an amended pleading . . . within 10 days after service of the amended pleading.'" Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings, LLC, No. 09-CV-1426 JRT/SER, 2011 WL 2261298, at *3 n.5 (D. Minn. Mar. 21, 2011) report and recommendation adopted sub nom. Buffalo Wild Wings, Inc. v. Buffalo Wings & Rings, No. CIV. 09-1426 JRT/SER, 2011 WL 2261284 (D. Minn. June 8, 2011) (citing Fed. R. Civ. P. 15(a) (2007)).

While the majority of district court cases which address responsive pleadings to an amended complaint "base their analysis in some part on the provisions of the prior version of [Rule] 15(a)," despite the "change in language" under the 2009 Amendments, these prior cases remain "instructive on this issue." Id. It appears from the commentary that the purpose of the 2009 Amendments to Rule 15 was "to make [] changes in the time allowed to make one amendment as a matter of course." Adv. Comm. Notes to 2009 Amendments to Fed. R. Civ. P. 15. While

14

"the 'plead in response to an amended pleading' language is no longer in the current version of the rule," "[t]he advisory committee notes make clear [] that the changes to the rule are meant to establish new time limits for filing responsive pleadings and there is nothing in the notes to suggest the rule was meant to change the scope of a party's substantive response to an amended pleading." Buffalo Wild Wings, Inc., 2011 WL 2261298, at *3 n.5.  Therefore, the 2009 Amendments to Rule 15 do not render the prior cases on this issue any less instructive as the "plead in response to an amended pleading" language is still pertinent to the allowable scope of a response to an amended pleading.

Prior to the 2009 Amendments, Rule 13(f) only allowed a party to amend a responsive pleading to assert an omitted counterclaim "if there is an acceptable reason for the [omission], or if the ends of justice would be served by allowing the amendment." S. New England Tel. Co. v. Global NAPS, Inc., No. CIVA 3:04-CV-2075 JC, 2007 WL 521162, at *3 (D. Conn. Feb. 14, 2007) (citing Fed. R. Civ. P. 13(f) (2007)).  In contrast to the minor effect of the 2009 Amendments on Rule 15, the abrogation of Rule 13(f) by the 2009 Amendments significantly affects continuing viability of prior caselaw. The elimination of Rule 13(f) "establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim,"

15

where before 2009, the addition of a counterclaim in an amended pleading was governed by Rule 13(f) in conjunction with Rule 15. Adv. Comm. Notes to 2009 Amendments to Fed. R. Civ. P. 15.

Under pre-2009 versions of the Federal Rules of Civil Procedure, those courts which gave particular weight to the interplay of Rules 15(a) and 13(f) followed the narrow approach. Those courts following the narrow approach "held that an amended answer must be confined specifically to the amendments to the complaint," based on the interplay of Rules 13(f) and 15. Elite Entm't, Inc., 227 F.R.D. at 446; see, e.g., S. New England Tel. Co., 2007 WL 521162, at *2-3 (following the narrow approach based on "its view of the interplay between certain provisions of Rule 13 and Rule 15(a)"); Wechsler v. Hunt Health Sys., Ltd., 186 F. Supp. 2d 402, 415 (S.D.N.Y. 2002) (holding, based on Rules 13(f) and 15(a), that defendants could not add "defenses and allegations," which "go above and beyond responding to" the Amended Complaint, without first obtaining leave of court). However, the 2009 Amendments to the Federal Rules of Civil Procedure abrogated Rule 13(f) and "establishe[d] Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim," Adv. Comm. Notes to 2009 Amendments to Fed. R. Civ. P. 15, and, in so doing, eliminated the interplay of Rule 13(f) and Rule 15, which formed the basis of the narrow approach. Those prior cases following the narrow approach "thus

16

appear to be superseded to the extent that they are inconsistent with the current version of Rule 15" and its effect as the sole rule controlling the amendment of counterclaims. Upek, Inc. v. Authentec, Inc., No. 10-424-JF PVT, 2010 WL 2681734 (N.D. Cal. July 6, 2010). This leaves the permissive approach and the moderate approach as the remaining valid lines of case law on this issue.

Courts applying the permissive view hold "that once a plaintiff amends a complaint, the defendant always has a right to amend to bring new counterclaims, without regard to the scope of the amendments." Elite Entm't, Inc., 227 F.R.D. at 446; see, e.g., Digital Privacy, Inc., 199 F. Supp. 2d at 459 n.2 (stating that "when a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint" and that plaintiff "chose to amend its complaint . . . at its own peril"); American Home Prod. Corp. v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986) (holding that a defendant is entitled to respond to an amended complaint even with "eleventh-hour additions").

While the permissive approach does not directly conflict with the current language of Rule 15(a), it does not appear to be the most appropriate approach. Notably, "[i]f every amendment, no matter how minor or substantive, allowed

17

defendants to assert counterclaims or defenses as of right, claims that would otherwise be barred or precluded could be revived without cause." E.E.O.C. v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y. 2002). "This would deprive the Court of its ability to effectively manage the litigation." Id. Furthermore, the permissive approach appears to conflict with the above described interpretation of the 2009 Amendments to Rule 15, which removed the "plead in response" language. Buffalo Wild Wings, Inc., 2011 WL 2261298, at *3 n.5.

Courts applying the moderate view hold "that an amended response may be filed without leave only when the amended complaint changes the theory or scope of the case, and then, the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint." Elite Entm't, Inc., 227 F.R.D. at 446; see Uniroyal Chem. Co., 1996 WL 120685, at *4; Pereira v. Cogan, No. 00 Civ. 619(RWS), 2002 WL 1822928, at *4 (S.D.N.Y. Aug. 7, 2002); see also, Tralon Corp., 966 F. Supp. at 832 (holding that defendant could plead anew only because plaintiff's second amended complaint greatly expanded both the factual allegations as well as the scope of the claims). "The underlying premise to this approach is 'what is good for the goose is good for the gander.'" Uniroyal Chem. Co., 1996 WL 120685, at *4.

18

"Not only is this moderate approach predominant in the caselaw, the requirement that an amended response reflect the change in theory or scope of the amended complaint is consistent with Rule 15's [pre-2009 Amendments] requirement that an amended pleading must 'plead in response' to the amended pleading." Elite Entm't, Inc., 227 F.R.D. at 446-47 (citing Uniroyal Chem. Co., 1996 WL 120685, at *4-5). As the purpose behind the 2009 Amendments to Rule 15 appears to have been only to make "changes in the time allowed to make one amendment as a matter of course," the "plead in response" language is arguably still pertinent to the allowable scope of a response to an amended pleading. Adv. Comm. Notes to 2009 Amendments to Fed. R. Civ. P. 15; see Buffalo Wild Wings, Inc., 2011 WL 2261298, at *3 n.5.

As recognized in Elite Entertainment:

> Commentators also agree that the moderate view is the appropriate view. In the view of one prominent commentator, Professor James Moore, "[n]ormally, a party responding to an amended pleading must 'plead in response' to the amended pleading, and must request leave of court if it wishes to add any new counterclaims in its response to the amended pleading." See 3 James W. Moore, et al., Moore's Federal Practice § 15.17[6] (3d ed. 1997). Yet, "when a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of the court before the defendant could respond with appropriate counterclaims." Id.

Elite Entm't, Inc., 227 F.R.D. at 446-47. Accordingly, the better interpretation of Rule 15(a) appears to this Court to be "the moderate approach that permits a defendant to respond to an

amended complaint that changes the theory or scope of the case by adding counterclaims that similarly change the theory or scope of the case." Uniroyal Chem. Co., 2005 WL 677806, at *2. Furthermore, the Court notes that "a district court has broad discretion in deciding whether to strike matters from pleadings." F.D.I.C., 882 F. Supp. 2d at 870 (citing Renaissance Greeting Cards, Inc., 227 F. App'x. at 246).

### v. Analysis

First, while this Court finds the moderate approach to be the better interpretation of Rule 15, the Court need not formally adopt such approach as VIS's motion to strike fails under either the permissive approach or the moderate approach. Applying the permissive approach, when plaintiff's amended complaint "changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint." Digital Privacy, Inc., 199 F. Supp. 2d at 459 n.2 (emphasis added). Accordingly, as it is undisputed that Plaintiff changed at least the damages theory of the case by adding a claim for willful infringement, Plaintiff's motion to strike Defendants' thirteenth counterclaim cannot prevail under the permissive approach.

Under the moderate approach, "the breadth of the changes in the amended response must reflect the breadth of the changes in the amended complaint." Elite Entm't, Inc., 227 F.R.D. at 446.

However, this breadth requirement is one of proportionality and it does not require the changes to the response to be directly tied to the changes in the amended complaint. Id. (citing Uniroyal Chem. Co., 2005 WL 677806, at *4). "Thus, if major changes are made to the complaint, then major changes may be made to the response." Id.; see also Pereira, 2002 WL 1822928, at *4 ("If the plaintiff expands its case by adding new theories or claims, it cannot complain if the defendant seeks to do the same by averring new counterclaims."). "[T]here is no requirement that a defendant specifically tailor its answer to the amended complaint; rather, moderate courts attempt to discern whether the defendant's answer affects the scope of the litigation in a manner commensurate with the amended complaint." S. New England Tel. Co., 2007 WL 521162, at *2 (citing Uniroyal Chem., 2005 WL 677806, at *2) (emphasis added).

Here, it is clear that VIS's addition of the willful infringement claim to the amended complaint, which allows for enhanced damages, changed the scope of the case. In re Seagate, 497 F.3d 1360, 1371 (Fed. Cir. 2007). A claim of willful infringement is premised on a separate theory of patent infringement than that of direct or induced infringement as it requires, at least, the "reckless disregard" of the possibility of infringing another's known patent. Id.; see Uniloc USA, Inc. v. Microsoft Corp., 640 F. Supp. 2d 150, 176-77 (D.R.I. 2009)

aff'd in part, rev'd in part, 632 F.3d 1292 (Fed. Cir. 2011) (characterizing willful infringement as "objectively reckless unreasonable conduct"); i4i Ltd. Partnership v. Microsoft Corp., 598 F.3d 831, 860 (Fed. Cir. 2010) ("Infringement is willful when the infringer was aware of the asserted patent, but nonetheless 'acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.'" (quoting In re Seagate, 497 F.3d at 1371)).  The deterrent of enhanced damages applies when willful infringement has been found and is determined "by [the] egregiousness of the defendant's conduct based on all the facts and circumstances." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992). Thus, a willful infringement allegation does not "merely allow[] for additional damages," as VIS asserts, Pl.'s Rebuttal Br. at 8, ECF No. 173, but provides for the possibility of enhanced and punitive damages "as a penalty for an infringer's increased culpability, namely willful infringement or bad faith." Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1348 (Fed. Cir. 2004) (citing Beatrice Foods Co. v. New Eng. Printing & Lithographing Co., 923 F.2d 1576, 1579 (Fed. Cir. 1991)).  Furthermore, "[a]lthough an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees." Spectralytics, Inc. v. Cordis

Corp., 649 F.3d 1336, 1349 (Fed. Cir. 2011) (citing inter alia Transclean Corp. v. Bridgewood Servs., Inc., 290 F.3d 1364, 1379 (Fed. Cir. 2002)). Thus, willful infringement is a claim which is based on a theory of objectively reckless and unreasonable infringement and can result in an award of attorney's fees as well as enhanced and punitive damages.

Samsung's addition of its inequitable conduct counterclaim and affirmative defense introduced a theory of patent invalidity based on its assertion that VIS specifically intended to deceive the United States Patent and Trademark Office (hereinafter "USPTO"), and that such deception had "but-for" materiality to patent issuance. Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (defining the strict "but-for" materiality test and including an equitable exception for "cases of affirmative egregious misconduct" (emphasis added)). "[I]nequitable conduct regarding any single claim renders the entire patent unenforceable . . ., cannot be cured by reissue . . . or reexamination . . ., [and] can spread from a single patent to render unenforceable other related patents and applications in the same technology family." Id. at 1288 (internal citations omitted). "Further, prevailing on a claim of inequitable conduct often makes a case 'exceptional,' leading potentially to an award of attorneys' fees under 35 U.S.C. § 285." Id. at 1289 (citing Brasseler, U.S.A. I, L.P. v.

23

Stryker Sales Corp., 267 F.3d 1370, 1380 (Fed. Cir. 2001)).
Thus, inequitable conduct is a claim based on material and
intentional deception and can result in an award of attorney's
fees, as well as unenforceability of the patent(s) at issue.

Both claims at issue here, willful infringement and
inequitable conduct, are based on allegations of bad faith
behavior and, if proven, can result in enhanced detrimental
effects. In other words, there is a rough equivalence between
the reckless disregard required for willful infringement and the
material deception of the USPTO required for inequitable
conduct. Thus, exercising its "broad discretion in deciding
whether to strike matters from pleadings," F.D.I.C., 882 F.
Supp. 2d at 870 (citing Renaissance Greeting Cards, Inc., 227 F.
App'x. at 246), the Court determines that Defendants' addition
of the allegations of inequitable conduct affected "the scope of
the case in a manner commensurate with" VIS's addition of the
willful infringement claim. S. New England Tel. Co., 2007 WL
521162, at *2 (citing Uniroyal Chem., 2005 WL 677806, at *2).
Therefore, under these circumstances, Samsung's addition of the
inequitable conduct allegations[4] in its amended response to VIS's

---

[4] As Defendants' inequitable conduct counterclaim and affirmative
defense are premised upon the same facts and law, the addition of the
inequitable conduct affirmative defense did not add any new matter to
the case not already present through the inequitable conduct
counterclaim. Thus, the affirmative defense did not increase the
scope of the case beyond the increase to scope from the addition of
the inequitable conduct counterclaim. As such, the above analysis and

24

amended complaint is permissible as a matter of right under the moderate approach to Rule 15.

For the reasons above, Defendants' addition of the inequitable conduct counterclaim and affirmative defense in their amended response is permissible without leave of court pursuant to Rule 15 under either the permissive approach or the moderate approach.   Accordingly, VIS's Motion to Strike is **DENIED**.   ECF No. 141.

### C. VIS's Motion for Summary Judgment

In the event this Court denied VIS's motion to strike, VIS alternatively moved for summary judgment with regard to the two allegations of inequitable conduct set forth in Samsung's thirteenth counterclaim.   Samsung makes two allegations of inequitable conduct.   The first allegation asserts that Dr. Ann Wang, a true inventor, signed Prof. Halal's name where Prof. Halal's original signature as another true inventor was required on the '341 Application Declaration.   Defs.' Answer to the First Am. Compl. 34-36, ECF No. 132.   The second allegation asserts the withholding of "materially relevant information," including the "Rakib" prior art reference, "from the USPTO with the intent to deceive" during the prosecution of the '733 and '398 patents. Id. at 36-40.   For Samsung to prevail on its allegations of

conclusion are equally applicable to the newly added affirmative defense.

inequitable conduct, it "must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO" and, at trial, must prove both "but-for" materiality and specific intent "by clear and convincing evidence." Therasense, Inc., 649 F.3d at 1287 (citing Star Scientific Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008)) (emphasis added).

### i. VIS's Arguments in Support of their Motion

VIS argues that there is no genuine issue of material fact as to whether it sought to deceive the USPTO or whether such actions meet the required "but-for" materiality test, and, as such, the Court should grant summary judgment in VIS's favor as to Samsung's counterclaim of inequitable conduct.

With regard to the allegation of inequitable conduct based on Dr. Wang having signed Prof. Halal's name on the patent application, VIS argues that Dr. Wang had authorization to sign Prof. Halal's name and that her act of signing was thus a mere technical violation of USPTO procedure, which, "absent fraud or intentional deception, [is] not inequitable conduct as would [be required to] invalidate a patent." Mem. in Supp. at 19, ECF No. 142 (citing Seiko Epson corp. v. Nu-Kote Int'l, Inc., 190 F.3d 1360, 1367 (Fed. Cir. 1999)). VIS cites to Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co. in support of the proposition that "a declaration for inventorship [] not personally signed by at

26

least one of the named inventors, but [] signed on his behalf with his authorization" does not constitute inequitable conduct and argues that, as in Ajinomoto, Dr. Wang's signature on behalf of Prof. Halal arose from a technical misunderstanding of the USPTO procedures.  Id. (citing Ajinomoto, 228 F.3d 1338, 1343 (Fed. Cir. 2000)).  VIS asserts that Dr. Wang filed the '341 application pro se, at the time had no formal legal training, and "was not aware of the PTO requirement that the declaration of inventorship contain original signatures of all co-inventors."  Mem. in Supp. at 20-21, ECF No. 142 (citing Ex. 1 ¶ 9, ECF No. 142-1).  VIS further asserts that "summary judgment on this issue is warranted" because, to prevail, "Defendants must prove that specific intent to deceive is the single most reasonable inference" and when, as here, "there are multiple reasonable inferences that may [be] drawn, intent to deceive cannot be found."  Id. at 22 (citing Therasense, Inc., 649 F.3d at 1290).

With regard to the allegation of inequitable conduct based on patent applicant VIS's failure to disclose prior art references, including "Rakib," VIS argues that, pursuant to M.P.E.P. § 609.02, patentees have no duty to disclose art that is already cited by the USPTO in a parent application.  Id. at 22-23.  VIS asserts that, consistent with M.P.E.P. § 609.02, "it was Dr. Ann Wang's understanding [at the time] that there was no

27

duty to disclose references in a continuation-in-part [] that were previously disclosed in a parent application." Id. at 24 (citing Ex. 1 ¶ 17, ECF No. 142-1). VIS further asserts that, notwithstanding the fact that Dr. Wang wrote the words "caution, important art" on the "Rakib" reference at some point in the past, Dr. Wang's deposition testimony indicating that she does not remember when, or in connection to which project or activity with VIS, she wrote those words supports an inference of no intent to deceive. Id. at 24-25 (citing Ex. 8 at 283:15-285:6, ECF No. 142-8; Ex. 1 ¶¶ 19-20, ECF No. 142-1). VIS also argues that the '733 and '398 patents did not issue "but-for" patentee's failure to cite "Rakib" to the USPTO because patentee had already overcome five rejections of the '492 patent, the parent application, based on that same piece of prior art, without having had to amend the claims, but purely by arguing that prior art reference "Rakib" failed to disclose the "conversion" element of VIS's invention. Id. at 25-26. VIS asserts that the "conversion" at issue in the parent application is similarly present in all claims of the '733 and '398 patents and, as such, any rejections under "Rakib" would have been overcome by the same arguments previously advanced by VIS. Id. at 26.

### ii. Samsung's Arguments in Opposition

Samsung argues that "Dr. Wang's declaration that she believed personal signatures were not required is belied by both her contemporaneous actions," including her "failure to indicate she was signing per Dr. Halal's alleged authorization," "and her deposition testimony in this case." Mem. in Response at 17-18, ECF No. 152. Samsung specifically questions "why she would sign by direction for the inventor eight miles away [Prof. Halal] but not for the [other] inventors over 6,900 and 2,600 miles away" as well as "submit original signatures in other instances." Id. at 18. Samsung asserts that "the circumstantial evidence, when interpreted in Samsung's favor (as it must be on this motion), and Dr. Wang's subsequent inconsistent [deposition] testimony, strongly supports the conclusion that Dr. Wang had actual knowledge that the absence of Dr. Halal's actual signature was material." Id. at 17. Samsung also asserts that courts must be cautious about granting summary judgment where the outcome turns on a determination of intent, and that, even where the facts are undisputed, if the factual inferences are disputed there can be no summary judgment. Id. at 4-5 (citing Morrison v. Nissan Co., Ltd., 601 F.2d 139, 141 (4th Cir. 1979) (emphasis added). Samsung argues that, under this standard, Dr. Wang's intent in signing Prof. Halal's name presents a genuine issue of material

29

fact and that VIS cannot prove otherwise by simply introducing contradictory testimonial evidence. Id. at 17.

Samsung also asserts that, at a minimum, "genuine issues of fact exist as to whether the writing falsely represented as Dr. Halal's signature constitutes an unmistakably false affidavit." Id. at 13. Samsung argues that it is unnecessary to prove "but-for" materiality where an unmistakably false affidavit exists and that such doctrine has been recognized in other cases. Id. (citing Therasense, 649 F.3d at 1285; Ex Parte Hipkins, Sr. and Frank M. Locotos, No. 90-2250, 20 U.S.P.Q.2d 1694 (B.P.A.I. Aug. 7, 1991)). Samsung further argues that "[e]ven if Dr. Wang's submission of the Declaration of Invention does not constitute an unmistakably false affidavit," "a personal signature is required on a Declaration of Invention" under 37 C.F.R. § 1.64. Id. at 15. Samsung therefore asserts that "simple statutory interpretation shows that a patent is per se invalid if it does not strictly comply with the requirements of 35 U.S.C. § 115 and 37 C.F.R. § 1.64." Id. (citing Ex Parte Hipkins, 20 U.S.P.Q.2d 1694 (seeking to correct by reissue the false signature on the original declaration where signature was not made by the co-inventor but instead was made by someone else on his behalf)). Samsung further argues that "the fact that [VIS] could have obtained or can correct the patent by following proper procedures now is not a remedy that affects this lawsuit" and,

furthermore, such actions "are speculative until completed."
Id. at 16.

As to the second allegation of inequitable conduct, Samsung
argues that if "Rakib" had been disclosed by VIS it would have
invalidated VIS's patents, thus satisfying the "but-for"
materiality requirement. Id. at 19. Moreover, Samsung argues
that patentee VIS did have a duty to disclose "Rakib" as it was
not cited by the examiner during consideration of the '341
parent application until after the continuing applications,
which later issued as the '733 and '398 patents, had already
been filed. Id. at 19-20 (citing to McKesson Info. Solutions,
Inc. v. BridgeMed., Inc., 487 F.3d 897, 925 (Fed. Cir. 2007)).
Samsung also argues that "VIS does not offer any facts to
dispute that Dr. Wang knew of Rakib and its materiality," but
"merely offers new declaration testimony regarding her general
inability to recollect anything about when she discovered" or
annotated the "Rakib" reference. Id. at 24. Samsung further
asserts that, with respect to the "Rakib" reference she produced
in discovery, "Dr. Wang's notation 'Caution, Important Art' next
to Rakib claim 1 and her testimony that she disclosed it to her
prosecution counsel [Mr. Tobin] show that she knew it was
material" and that "Mr. Tobin's inability to remember such
disclosure can give rise to an inference of knowing omission by

Dr. Wang," depending on the credibility accorded Mr. Tobin and Dr. Wang. Id. at 25-26.

### iii. VIS's Rebuttal Arguments

As to the first allegation of inequitable conduct, VIS asserts that Samsung has failed to set forth specific facts that are in dispute regarding Dr. Wang's signature for Prof. Halal, and is relying on the "mere allegations of the pleadings," as made in its counterclaim.   Pl.'s Rebuttal Br. at 10, ECF No. 173.   VIS argues that the facts are undisputed and Dr. Wang's testimony is not contradictory.   Id. at 15-16.   Rather, VIS posits, the most reasonable inference from the facts and testimony is that Dr. Wang signed for Prof. Halal with his authorization for reasons of convenience and answered the questions at her deposition eight years later to the best of her knowledge.   Id.   VIS thus concludes that Samsung has failed to show intent and "but-for" materiality by "clear and convincing evidence" as required by Therasense.[5]   Id. at 16-17.   VIS further asserts that "Defendants' counterclaim is precisely the type of claim that led the Federal Circuit to liken the defense of inequitable conduct to both a plague and a cancer."   Id. at 11.

---

[5] The Court notes that Therasense sets forth the standard for proving inequitable conduct at trial and that this is a motion for summary judgment.   However, the trial standard is relevant because, at summary judgment, "the judge must view the evidence presented through the prism of the substantive evidentiary burden."   Anderson v. Liberty Lobby Inc., 477 U.S. 242, 254 (1986).

As to the second allegation of inequitable conduct, VIS argues in its reply brief that not only was there "no duty to disclose the Rakib reference," Id. at 18, but that, "the record is entirely devoid of any evidence of intent to deceive," Id. at 19. In support of this contention, VIS asserts that "there is no support in any of Defendants' citations for the idea that Dr. Wang did not give the reference at issue to her prosecution counsel," Mr. Tobin, and "[g]iven the large number of matters that Mr. Tobin handles in his full-time practice as a patent prosecutor, it is unsurprising that he would not remember a single reference from nearly a decade earlier" when he was deposed. Id. at 20-21.

### iv. Applicable Standard

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986) (defining "genuine" dispute as "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party"). Furthermore, the standard at summary judgment requires that the evidence be viewed in favor of the nonmovant and that all "justifiable inferences" be drawn in his favor. Id. at 255.

If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits and sworn statements illustrating a genuine issue for trial.[6]  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  In doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party, and, further, the judge may not make credibility determinations. Id. at 255; T-Mobile Northeast LLC v. City Council of City of Newport News, Va., 674 F.3d 380, 385 (4th Cir. 2012).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."

---

[6] "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

34

Anderson, 477 U.S. at 255.  Therefore, "[a] court must exercise great care in granting summary judgment when a party's motives or intentions are at issue," because "'determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ–a function traditionally left to the jury.'"  Hall v. Williams, No. 91-6007, 1992 WL 71566 at *3 (4th Cir. April 13, 1992) (unpublished table decision at 960 F.2d 146) (quoting 10A Charles A. Wright, et al., Federal Practice and Procedure § 2730, at 238 (2d ed. 1983)).  However, to prevent summary judgment, "there still must be some fact from which the trier of fact reasonably could infer some other state of mind."  Hunsberger v. Wood, 564 F. Supp. 2d 559, 572 (W.D. Va. 2008) rev'd and remanded on other grounds, 570 F.3d 546 (4th Cir. 2009); see e.g., Anderson, 477 U.S. at 255-56 ("Thus, where the factual dispute concerns actual malice, . . . the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not.").

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  Moreover, because a ruling on summary judgment "necessarily implicates the substantive

35

evidentiary standard of proof that would apply at the trial on the merits," to defeat a motion for summary judgment "there must be evidence on which the jury could reasonably find for the [non-movant]" under the standard of proof at trial. Anderson, 477 U.S. at 252. Thus, "[i]n rendering a decision on a motion for summary judgment, a court must 'view the evidence presented through the prism of the substantive evidentiary burden' that would inhere at trial." Apple Computer, Inc. v. Articulate Sys., Inc., 234 F.3d 14, 20 (Fed. Cir. 2000) (quoting Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh, 139 F.3d 877, 880, (Fed. Cir. 1998) (quoting Anderson, 477 U.S. at 254)).

### v. Analysis

The parties agree that the basic facts and deposition testimony are undisputed. The undisputed facts with respect to Prof. Halal's signature are summarized as follows: 1) Prof. Halal is correctly named as a co-inventor on the '341 Application; 2) Dr. Wang signed Prof. Halal's name to the '341 Application without indicating it was not personally signed by Prof. Halal; 3) Dr. Wang testified during her first deposition that, to the best of her knowledge at that time, Prof. Halal had personally signed the '341 Application; 4) after reviewing Prof. Halal's deposition of July 24, 2013, Dr. Wang testified in her second deposition that she had signed Prof. Halal's name to the '341 Application pursuant to his authorization.

The undisputed facts with respect to the prior art reference allegation are summarized as follows: 1) prior art reference "Rakib" was cited by the examiner during prosecution of the '341 Application on February 21, 2008 in a Notice of References Cited; 2) the '733 patent was filed May 22, 2007, and the '398 patent, filed May 6, 2011, is a continuation of the '733 patent; 3) on a copy of "Rakib," Dr. Wang wrote "caution important art" and, at deposition, she did not remember when she wrote those words; 4) "Rakib" was not considered by the examiner during prosecution of the '733 or '398 patents.  Therefore, the only genuinely disputed issues with respect to each alleged instance of inequitable conduct are the inferences of intent and materiality to be drawn from the undisputed facts.

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted <u>material information</u> with the <u>specific intent to deceive</u> the PTO" and, at trial, must prove both materiality and specific intent "by clear and convincing evidence." <u>Therasense, Inc.</u>, 649 F.3d at 1287 (citing <u>Star Scientific Inc.</u>, 537 F.3d at 1365) (emphasis added).  Thus, at summary judgment, the question before the Court is whether there is a genuine issue of material fact as to whether "the applicant misrepresented or omitted material information with the intent to deceive the PTO" such that a reasonable fact finder could find by clear and convincing

37

evidence that inequitable conduct has occurred. Id. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

When the Federal Circuit in Therasense identified materiality and specific intent to deceive as the elements necessary to prove inequitable conduct, it further specified that "[i]ntent and materiality are separate requirements" and, as such, "a court must weigh the evidence of intent to deceive independent of its analysis of materiality." Therasense, Inc., 649 F.3d at 1290. Consequently, "[p]roving that the applicant knew of a [prior art] reference, should have known of its materiality, and decided not to submit it to the PTO" will not suffice to prove specific intent to deceive. Id. at 1290. Furthermore, even if an accused infringer satisfies both prongs of the inequitable conduct test, the district court must still "weigh the equities to determine whether the applicant's conduct before the PTO warrants rendering the entire patent unenforceable." Id. at 1287 (citing Star Scientific Inc., 537 F.3d at 1365).

With regard to the materiality prong of inequitable conduct, "as a general matter, the materiality required to

38

establish inequitable conduct is but-for materiality." <u>Id.</u> at
1291. "But-for" materiality requires that "the PTO would not
have allowed a claim had it been aware of" the alleged
misconduct. <u>Id.</u> For example, "in assessing the materiality of
a withheld reference, the court must determine whether the PTO
would have allowed the claim if it had been aware of the
undisclosed reference." <u>Id.</u> Furthermore, the materiality
requirement set forth by the Federal Circuit in <u>Therasense</u>
"includes an exception for affirmative acts of egregious
misconduct," such as perjury and suppression of evidence. <u>Id.</u>
at 1293.

     With regard to the specific intent prong of inequitable
conduct, first "it bears noting that the intent in question is
an intent to deceive the patent office into issuing the patent,
not merely the intent to do what was done in prosecution."
<u>3M Innovative Properties Co. v. Dupont Dow Elastomers LLC</u>, 361
F. Supp. 2d 958, 977 (D. Minn. 2005) (citing <u>Therma-Tru Corp. v.
Peachtree Doors, Inc.</u>, 44 F.3d 988, 995 (Fed. Cir. 1995)). When
making the determination as to whether the applicant acted with
the "intent to deceive the PTO," the Court must keep in mind
that a finding "that the misrepresentation or omission amounts
to gross negligence or negligence under a 'should have known'
standard does not satisfy this intent requirement." <u>Therasense,
Inc.</u>, 649 F.3d at 1290. Moreover, when determining deceptive

39

intent from "indirect and circumstantial evidence," "to meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" Id. (quoting Star Scientific Inc., 537 F.3d at 1366 and citing Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd., 559 F.3d 1317, 1340 (Fed. Cir. 2009)). Indeed, because, under the clear and convincing evidentiary standard, "the evidence 'must be sufficient to require a finding of deceitful intent in the light of all the circumstances[,]' . . . when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." Id. at 1290-91 (quoting Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 873 (Fed. Cir. 1988)) (emphasis added in Therasense, Inc.).

Here, it has been argued persistently by Samsung that the determination of whether there is a genuine issue of material fact regarding Dr. Wang's intent arguably implicates her credibility with regard to her deposition testimony. As previously noted, the Court is barred from making such credibility determinations at the summary judgment stage. Anderson, 477 U.S. at 255. Of course, for there to be a true credibility issue in the first place, "there still must be some fact from which" the trier of fact could reasonably find either that Samsung has or has not shown specific intent to deceive by

40

clear and convincing evidence, thus creating a genuine dispute as to intent.[7] Hunsberger, 564 F. Supp. 2d at 572; see Anderson, 477 U.S. at 255-56 ("Thus, where the factual dispute concerns actual malice," a state of mind inquiry, "the appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."). Thus, "[w]hile [Federal Circuit] precedent urges caution in the grant of summary judgment respecting a defense of inequitable conduct, summary judgment is not foreclosed." Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993).

### 1. Inequitable Conduct Based on Prof. Halal's Signature

First considering the specific intent prong of inequitable conduct, the appropriate summary judgment question is whether, drawing all reasonable inferences in Samsung's favor, "the evidence in the record could support a reasonable [fact finder] finding either that [Samsung] has shown [specific intent to deceive the USPTO] by clear and convincing evidence or that

---

[7] Moreover, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" are considered "material." Anderson, 477 U.S. at 248. The question before the Court is whether Dr. Wang had the specific intent to deceive the USPTO at the time these actions took place. In determining specific intent, a potential lie years in the future from the conduct at issue is immaterial. Whether or not Dr. Wang made false statements during her depositions has no effect on the Court's following analysis or conclusion. See Hunsberger, 564 F. Supp. 2d at 572; Anderson, 477 U.S. at 255-56.

[Samsung] has not." Anderson, 477 U.S. at 255-56. Keeping all of the above in mind and drawing all reasonable inferences in non-movant Samsung's favor, the Court cannot justifiably infer that a reasonable fact finder could find, under the clear and convincing evidence standard, that specific intent to deceive the USPTO is the "'single most reasonable inference' to be drawn from the evidence" before the Court, as would be required for Samsung to prevail against VIS's summary judgment motion. Therasense, Inc., 649 F.3d at 1290 ("[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."). Specifically, the Court finds that, even drawing all reasonable inferences in Samsung's favor, because no reasonable fact finder could conclude as the most reasonable inference that Dr. Wang had the specific intent to deceive the USPTO into issuing the claims, there is no genuine issue of material fact as to Dr. Wang's intent.

The expected motivation for submitting the false signature of a true inventor would be the threat of losing the priority date from a provisional patent application. The filing of a provisional patent application allows the patentee to obtain a filing date and accords them one year in which to submit a non-provisional patent application on the same matter. If the deadline for filing a nonprovisional patent application was imminent and one of the inventors had failed to sign an oath or

42

declaration, the patentee would have three options: 1) show that the inventor is unavailable or refuses to sign and acquire a valid signature in place of the inventor in accordance with 35 U.S.C. §§ 116, 117, 118; 37 C.F.R. § 1.64; M.P.E.P. §§ 605.04 and 409.01-03; 2) remove from the nonprovisional patent application that subject matter contributed by the non-signing inventor and proceed without that inventor; or 3) work to obtain the inventor's signature and risk filing the nonprovisional patent application after the deadline, thus forfeiting the benefit of the provisional application's priority date.

However, in this case, the nonprovisional patent application was filed nearly a month before the deadline.[8]  Had Dr. Wang known, as Samsung contends, that original signatures were required and that the lack of an oath or declaration would be a material defect in the patent application, Dr. Wang would have had over three weeks to obtain Prof. Halal's original signature before the priority date of the application would have been at risk.  Furthermore, obtaining Prof. Halal's signature would likely not have been a great hardship because, as pointed out by Samsung itself, Dr. Wang and Prof. Halal resided only eight miles apart and no facts indicate that he was unavailable during that time period.  Even assuming that Prof. Halal had

---

[8]  The provisional application was filed July 16, 2004 and the nonprovisional application was filed June 24, 2005, over three weeks before the July 18, 2005 deadline (the deadline being July 18, 2005 as July 16, 2005 was a Saturday).

43

been unavailable due to being in another area during that time period, Dr. Wang's successful procurement of original signatures from the inventors located over 6,900 and 2,600 miles away indicates that she would have likely been successful in obtaining Prof. Halal's signature in that instance as well. Furthermore, there are no facts to indicate that Prof. Halal would have been unwilling to sign the declaration or that he had not granted authorization for Dr. Wang to sign the declaration on his behalf. In fact, the deposition testimony from Prof. Halal indicates that Dr. Wang executing a signature on Prof. Halal's behalf was an established practice between them. See, Mem. in Supp., Ex. 9 at 92:12-23, ECF No. 142-9 ("Q: Did you authorize Ann Wang to sign your name on that document? A: Yes. We did that often, just for convenience. Rather than make a trip to her home in Virginia, I asked if she could sign for me."); see also id. at 102:19-103:8.

Therefore, even drawing all reasonable inferences in Samsung's favor, no reasonable fact finder could find, under the clear and convincing evidence standard, that the most reasonable inference is that Dr. Wang had the specific intent to deceive the USPTO into issuing the claims. Thus, there is no genuine issue of material fact with regard to the required specific intent prong of inequitable conduct and summary judgment for VIS is merited. Accordingly, the Court **GRANTS** VIS's motion for

44

summary judgment in favor of Plaintiff with regard to Samsung's allegation of inequitable conduct based on Dr. Wang's signing of Prof. Halal's name to the declaration. ECF No. 141.

Alternatively, the Court finds that summary judgment is appropriate because the undisputed facts demonstrate that Samsung cannot demonstrate "but-for" materiality by clear and convincing evidence. Notably, had the USPTO been aware of Dr. Wang having signed Prof. Halal's name with his authorization, patentee VIS would have been given the opportunity to remedy the error through the submission of a supplemental declaration pursuant to M.P.E.P. § 602.03. M.P.E.P. § 602.03 (8th ed. rev.9 August 2012) ("In the first Office action the examiner must point out every deficiency in a declaration or oath and require that the same be remedied."); see 35 U.S.C. § 26 ("Any document to be filed in the Patent and Trademark Office and which is required by any law, rule, or other regulation to be executed in a specified manner may be provisionally accepted by the Director despite a defective execution, provided a properly executed document is submitted within such time as may be prescribed."); 37 C.F.R. § 1.67(a) ("The Office may require, or inventors and applicants may submit, a supplemental oath or declaration meeting the requirements of § 1.63 or § 1.162 to correct any deficiencies or inaccuracies present in the earlier filed oath

45

or declaration."). Thus, "but-for" materiality would not have been met, even drawing all inferences in Samsung's favor.

Moreover, although Samsung correctly asserts that the Federal Circuit has recognized an exception to the "but-for" materiality requirement in rare cases involving "affirmative acts of egregious misconduct," Therasense, Inc., 649 F.3d at 1293, Samsung mischaracterizes and misapplies such exception. Samsung argues that the submission of an "unmistakably false affidavit" always rises to the level of egregious misconduct such that this exception applies. Mem. in Response at 13, ECF No. 152. However, as the Federal Circuit noted in Therasense:

> In actuality, [] the materiality standard set forth in this opinion includes an exception for affirmative acts of egregious misconduct, not just the filing of false affidavits. Accordingly, the general rule requiring but-for materiality provides clear guidance to patent practitioners and courts, while the egregious misconduct exception gives the test sufficient flexibility to capture extraordinary circumstances. Thus, not only is this court's approach sensitive to varied facts and equitable considerations, it is also consistent with the early unclean hands cases—all of which dealt with egregious misconduct. See Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 at 816-20 (1945) (perjury and suppression of evidence); Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 240 (1944) overruled on other grounds by Standard Oil Co. v. United States, 429 U.S. 17 (1976) (manufacture and suppression of evidence); Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 243 (1933) (bribery and suppression of evidence).

Therasense, Inc., 649 F.3d at 1293 (emphasis added). Applying

this standard, the Court cannot find that this signing on behalf of <u>another true inventor</u> <u>with such person's authorization</u> qualifies as affirmative egregious misconduct equivalent to perjury and suppression of evidence, as Samsung contends. Accordingly, on these facts, the exception to the "but-for" materiality requirement does not apply.   Therefore, Samsung's failure to satisfy the "but-for" materiality requirement supplies alternate grounds for granting summary judgment in favor of VIS with regard to this allegation.

## 2.  Inequitable Conduct Based on Failure to Disclose "Rakib" During Prosecution of the '733 and '398 Patents

With regard to the allegation of inequitable conduct based on VIS's failure to disclose material prior art references, M.P.E.P. § 609.02 states that "[t]he examiner will consider information which has been considered by the Office in a parent application when examining" a continuation, divisional, or continuation-in-part application filed under 37 C.F.R. § 1.53(b) and "[a] listing of the information need not be resubmitted in the continuing application."   M.P.E.P. § 609.02 (8th ed. rev.9 August 2012).   "In view of § 609 it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." <u>ATD Corp. v. Lydall, Inc.</u>, 159 F.3d 534, 547 (Fed. Cir. 1998) (citing <u>Transmatic, Inc. v. Gulton</u>

Industries, Inc., 849 F. Supp. 526 (E.D. Mich. 1994), aff'd in pertinent part, rev'd in part, 53 F.3d 1270 (Fed. Cir. 1995) for the same proposition with regard to a continuing application). "Indeed, the applicable regulations presume that some material information that previously was disclosed need not be resubmitted because that information remains "of record" (37 C.F.R. § 1.56(b)) and thus presumably available to the examiner." Bone Care Int'l, LLC v. Pentech Pharm., Inc., 741 F. Supp. 2d 854, 862 (N.D. Ill. 2010).

Despite M.P.E.P. § 609.02 completely removing the duty to disclose prior art references previously cited in a parent application, where the parent-child applications are co-pending, it cannot be expected that a USPTO examiner continually monitors all parent applications for new references as prosecution of the continuing applications progresses. See M.P.E.P. § 2001.06 (8th ed. rev.9 August 2012); see also McKesson Info. Solutions, Inc., 487 F.3d at 925 (determining patentee "was not entitled to assume that Examiner Trafton would recall his decision to grant the claims of the '372 patent when he was examining the [co-pending] application," which covered related subject matter). A reading of M.P.E.P. §§ 609.02 and 2001.06 together supports this conclusion. Specifically, M.P.E.P. § 2001.06, which governs disclosures between co-pending applications which are not parent-child, provides that:

48

> The individuals covered by 37 C.F.R. § 1.56 have a
> duty to bring to the attention of the examiner, or
> other Office official involved with the examination of
> a particular application, information within their
> knowledge as to other copending United States
> applications which are "material to patentability" of
> the application in question. As set forth by the court
> in Armour & Co. v. Swift & Co., 466 F.2d 767, 779 (7th
> Cir. 1972): "[W]e think that it is unfair to the busy
> examiner, no matter how diligent and well informed he
> may be, to assume that he retains details of every
> pending file in his mind when he is reviewing a
> particular application . . . [T]he applicant has the
> burden of presenting the examiner with a complete and
> accurate record to support the allowance of letters
> patent."

M.P.E.P. § 2001.06 (8th ed. rev.9 August 2012). Accordingly,

while McKesson and M.P.E.P. § 2001.06 deal with co-pending

rather than continuing applications, such analysis supports the

proposition that an examiner should not be required to

continually check for updates in applications that are co-

pending, even where they are parent and continuing applications.

Thus, M.P.E.P. § 609.02's removal of the duty to disclose prior

art references previously cited in a parent application cannot

logically act as a remedy for failing to disclose references

which are not considered by the USPTO in the parent application

until after the examiner has begun his substantive examination

of the continuing application.

These principles find application in the parties' arguments

regarding the '733 patent because the '733 patent and the '341

parent application were co-pending.    Relying on M.P.E.P.

§ 2001.06 and McKesson, Samsung argues that Dr. Wang did have a duty to disclose "Rakib" in the prosecution of the '733 patent due to the co-pending status of the '733 patent and the '341 parent application. For the following reasons, the Court disagrees. The '733 patent was filed on May 22, 2007, prior to the February 21, 2008 citation of "Rakib" by the examiner in the '341 parent application. However, substantive examination of the '733 patent's application did not begin until 2010, when the examiner conducted an inventor search on August 6, 2010. Mem. in Supp., Ex. 38, ECF No. 142-38. It is undisputed that when substantive examination of the '733 patent began in 2010, "Rakib" had already been cited and considered in 2008 by the Office in the prosecution of the '341 parent application. Thus, even under this Court's strict reading of M.P.E.P. § 609.02 in conjunction with M.P.E.P. § 2001.06, Dr. Wang had no duty to disclose "Rakib" in conjunction with the prosecution of the '733 patent.

Moreover, even were the Court to assume both that M.P.E.P. § 609.02 did not remove the duty to disclose "Rakib" and that Dr. Wang withheld "Rakib" with the specific intent to deceive the USPTO, Samsung would still not be able to prevail on its claim of inequitable conduct because the required "but-for" materiality is not present. A patent's "presumption of validity [under 35 U.S.C. § 282] is based on the presumption of

50

administrative correctness [with regard to the] actions of the agency charged with examination of patentability." Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563, 1569 (Fed. Cir. 1996) (citing Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1139 (Fed. Cir. 1985)). Thus, the examiner is presumed to have "fulfilled his duty as an examiner [under M.P.E.P. § 609.02] to review the ancestor applications and the references contained therein." Bone Care Int'l, LLC, 741 F. Supp. 2d at 862. In the instant case, the examiner was obligated under M.P.E.P. § 609.02 to consider "Rakib," along with all other references considered by the Office in the parent applications. Because the examiner did not begin his substantive examination of the '733 patent until 2010, when he "fulfilled his duty as an examiner," the "Rakib" reference cited in the parent application in 2008 would have come under his consideration during his examination of the '733 patent. Id. Therefore, Samsung cannot show that the USPTO would not have "allowed the claim if it had been aware of the undisclosed reference," because the examiner is presumed to have been aware of the reference through his review of the ancestor applications and to have chosen not to reject a claim in light of this reference.

Furthermore, the Court cannot "hold applicants responsible for ensuring that examiners abide by their responsibilities"

51

because "'[a] patentee cannot be penalized for a patent examiner's dereliction of duty.'" Chamberlain Grp., Inc. v. Lear Corp., 756 F. Supp. 2d 938, 971 (N.D. Ill. 2010) (quoting TM Patents, L.P. v. Int'l Bus. Mach. Corp., 121 F. Supp. 2d 349, 372 (S.D.N.Y. 2000)). "[E]ven if the Examiner failed to review the ancestor applications, such failure would not taint Plaintiffs' performance of its duty, as an applicant, to disclose the references." Bone Care Int'l, LLC, 741 F. Supp. 2d at 862. Therefore, the Court grants VIS's motion for summary judgment as to Samsung's allegation that VIS's failure to disclose "Rakib" during prosecution of the '733 patent amounted to inequitable conduct.

Because Samsung has alleged inequitable conduct arising from VIS's failure to cite "Rakib" in its prosecution of both the '733 patent and the '398 patent, the Court now turns to Samsung's allegations regarding the '398 patent. Unlike the need to consider M.P.E.P. §§ 609.02 and 2001.06 together when analyzing Samsung's '733 patent allegations, it is only necessary to look to M.P.E.P. § 609.02 when analyzing Samsung's '398 patent allegations. The "Rakib" reference was cited by the examiner in connection with the prosecution of the '341 parent application, which ultimately issued as the '492 patent on March 1, 2011. The '733 patent was filed as a continuation-in-part of the '341 application and the '398 patent was filed as a

continuation of the '733 patent on May 6, 2011, after the issuance of the '492 "grand-parent" patent. The M.P.E.P.'s definition of "parent" application in M.P.E.P. § 201.04 is not confined to the immediately preceding application, but applies the term to all earlier filed, related, nonprovisional applications to which the benefit of a priority date might be claimed under 35 U.S.C. § 120. M.P.E.P. § 201.04 (8th ed. rev.9 August 2012). Thus, on the evidence before the Court, M.P.E.P. § 609.02 clearly removes the duty to disclose, to the examiner overseeing the prosecution of the '398 patent, prior art considered by the Office in the prosecution of the '341 application. Therefore, because Dr. Wang had no duty to disclose "Rakib" to the examiner of the '398 patent, her failure to so disclose cannot constitute inequitable conduct. Accordingly, the Court grants VIS's motion for summary judgment as to Samsung's allegation that VIS's failure to disclose "Rakib" during prosecution of the '398 patent amounted to inequitable conduct.

Having now addressed Samsung's allegations involving both the '733 and '398 patents, and finding summary judgment appropriate with respect to both, the Court **GRANTS** VIS's motion for summary judgment as to Samsung's allegations that VIS's failure to disclose amounted to inequitable conduct. ECF No. 141.

53

### 3. Conclusion as to the Motion for Summary Judgment

For the reasons stated above, there are no genuine issues of material fact and the Court finds that, drawing all reasonable inferences in Samsung's favor, no reasonable fact finder could find by clear and convincing evidence that "the applicant misrepresented or omitted material information with the specific intent to deceive the PTO." Therasense, Inc., 649 F.3d at 1287. Accordingly, the Court **GRANTS** summary judgment in favor of Plaintiff on Defendants' thirteenth counterclaim. ECF No. 141.

### D. VIS's Motion to Bifurcate

VIS alternatively moves for bifurcation of this case into a jury trial and a bench trial, with "evidence relating solely to inequitable conduct and Defendants' 35 U.S.C. § 111 defense" excluded from the jury trial. Pl.'s Mem in Supp. of Mot. to Bifurcate 1, ECF No. 267. However, having granted VIS's motion for summary judgment as to Samsung's counterclaim alleging inequitable conduct, VIS's motion to bifurcate is now moot. Accordingly, the Court **DENIES as moot** Plaintiff's Motion to Bifurcate. ECF No. 266.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to strike, or, in the alternative, for summary judgment with regard to

Defendants' Thirteenth Counterclaim is hereby **GRANTED, in part, and DENIED, in part.** ECF No. 141.

Defendants were permitted to add the inequitable conduct counterclaim and affirmative defense without leave of court under either the permissive or moderate interpretations of Federal Rule of Civil Procedure 15. Accordingly, Plaintiff's Motion to Strike is **DENIED.** ECF No. 141.

Even drawing all reasonable inferences in Defendants' favor, no reasonable fact finder could find that "the applicant misrepresented or omitted material information with the specific intent to deceive the PTO" by clear and convincing evidence. Therasense, Inc., 649 F.3d at 1287. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED.** ECF No. 141.

Defendants' Request for Judicial Notice is **GRANTED.** ECF No. 154.

Plaintiff's Motion to Bifurcate is **DENIED as moot.** ECF No. 266.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 28 , 2014

55